UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDIBLE INTERNATIONAL, LLC and EDIBLE IP, LLC, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GOOGLE, LLC. | : | February 5, 2018 |
| | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

This is an action for federal trademark infringement, false designation of origin, and dilution arising under 15 U.S.C. §§ 1114(a), 1125(a) and 1125(c), and unfair competition and trademark infringement arising under Connecticut state law, all arising out of the willful infringement and dilution of Edible International, LLC's and Edible IP, LLC's (collectively "Edible Arrangements" or "Plaintiffs") registered trademarks by Defendant Google, LLC formerly known as Google, Inc. ("Google" or "Defendant"). Defendant's repeated and intentional placement of advertisements for Plaintiffs' competitors in prominent locations throughout search results for "Edible Arrangements," and in conspicuous proximity to a banner stating "shop for Edible Arrangements on Google…," is likely to cause confusion as to whether Plaintiffs' products and services are affiliated with, originate from, and/or are endorsed by these competitors. Accordingly, Edible Arrangements, by and through its undersigned attorneys, complains and alleges against Google as follows:

## THE PARTIES

1.      Plaintiff Edible International, LLC ("Edible International") is a Delaware limited liability company with a principal place of business at 95 Barnes Road, Wallingford, Connecticut 06492.

2.      Plaintiff Edible IP, LLC ("Edible IP") is a Connecticut limited liability company with a principal place of business at 95 Barnes Road, Wallingford, Connecticut 06492.

3.      Upon information and belief, Google is a corporation organized under the laws of the State of Delaware with its corporate offices located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because Edible Arrangements asserts claims of trademark infringement, false designation of origin, and dilution arising under 15 U.S.C. §§ 1114, 1125(a) and 1125(c).

5.      This Court has supplemental jurisdiction over the claims in this complaint that arise under the laws of the State of Connecticut pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal law claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

6.      This Court has personal jurisdiction over Edible Arrangements by virtue of the filing of this Complaint, and Edible Arrangements consents to its jurisdiction.

7.      Google is subject to personal jurisdiction in this district because it advertises, solicits clients, and conducts continuous, systemic, and routine business in the state of Connecticut and within this district, subjecting it to personal jurisdiction in this district.

8.      Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c) because Edible Arrangements is headquartered in Connecticut.  Google's interactive website is viewable in this judicial district and throughout the United States.  Google regularly engages in business in this judicial district, and its contacts are sufficient to subject it to personal jurisdiction in this district.

## GROWTH OF EDIBLE ARRANGEMENTS' BRAND AND BUSINESS

9.      Edible International is the successful franchisor of stores offering fresh cut fruit products, and is best known for its artistically-designed fresh fruit products evocative of floral designs and its dipped fruit products. These highly-regarded products are available through an extensive network of franchises throughout the United States and abroad, and through its websites, its call center, the Internet, and a handful of affiliate-owned stores.

10.     Edible IP is the owner and licensor of, among other things, the various trademarks, trade dress, domain names, copyrights, and other intellectual property used and associated with the famous EDIBLE ARRANGEMENTS business and brand, as set forth in greater detail below. Edible IP licenses these intellectual property assets to Edible International for use and sublicensing through Edible International's franchise system and websites.

11.     Edible Arrangements is a remarkable American success story, born out of the entrepreneurial spirit of its founder and owner, Tariq Farid. Mr. Farid purchased his first flower shop in East Haven, Connecticut at the age of 16, and within several years had grown his business to four locations.

12.     Drawing upon his experience and success as a florist, Mr. Farid developed a unique marketing program of fresh cut fruit baskets bearing designs inspired by floral arrangements. His vision then, and continuing today, was to create and offer to customers the highest quality cut fruit in a format reminiscent of floral designs.

13.     In 1999, Mr. Farid opened the first EDIBLE ARRANGEMENTS® store, through which he introduced his unique cut fruit products sculpted to look like flowers and floral designs.

14.     Prompted by inquiries from those interested in his novel business and creative branding, Mr. Farid began franchising his business in 2001, with the opening of the first-ever EDIBLE ARRANGEMENTS franchise in Waltham, Massachusetts.

15.     From then on, the EDIBLE ARRANGEMENTS brand and business experienced rapid growth and expansion. By 2004, just three years after the launch of the first franchise, Edible Arrangements was recognized as among the top 500 franchises in the United States by Entrepreneur Magazine.

16.     By 2006, the 500th franchise opened in Chicago, and by 2011, that number reached 1000. Today, there are over 1200 EDIBLE ARRANGEMENTS stores in at least 8 countries around the world, with more than 1100 stores located throughout the United States.

17.     Beyond this growing franchise system, Edible Arrangements markets its goods and services through a number of additional trade channels, including its popular www.ediblearrangements.com and www.edible.com websites, the company's toll-free call center, and affiliate-owned locations.

18.     As chronicled by the business media, Edible Arrangements has climbed to the upper echelon of franchisors in the United States. For example, Edible Arrangements ranked ninth on the Forbes 2011 list of top "franchises to start," was named one of the "Top 100 Internet Retailers" by Internet Retailer magazine; was 38th on Entrepreneur Magazine's 2017 Entrepreneur Franchise 500; and was ranked 3rd on Inc. magazine's list of top food and beverage companies. Most recently, the Franchise Times has ranked Edible Arrangements No. 128 in its list of the "Top 200 Franchises."

19.     Today, Edible Arrangements enjoys system-wide gross sales of its branded products and services in excess of half a billion dollars annually. Edible Arrangements' spectacular success is a direct result of its commitment to providing a consistent high-quality,

beautifully-designed product instantly recognizable by consumers as one made by Edible Arrangements, and its aggressive marketing and promotion of the famous EDIBLE ARRANGEMENTS trademark and brand.

20.     Edible Arrangements' franchisees share in the commitment to consistently deliver high-quality, beautifully-designed products to consumers that are instantly recognizable as an Edible Arrangements product offered under the famous EDIBLE ARRANGEMENTS trademarks and brand.

21.     Any consumer misperception or confusion as to the affiliation of Edible Arrangements or its products with competitors or their products will irreparably damage Edible Arrangements' valuable brand and goodwill, as well as that of Edible Arrangements' franchisees, who devote significant personal resources to running their shops.

## EDIBLE ARRANGEMENTS' VALUABLE INTELLECTUAL PROPERTY

22.     The Edible Arrangements business is predicated on the high quality of its goods and services and the famous trademarks that designate those goods and services.

23.     By marketing and promoting these brand identifiers aggressively in connection with its hugely-popular products and services, Edible Arrangements has created a stable of extremely well-known marks that the public uses to identify and distinguish Edible Arrangements' goods in the marketplace.

24.     Of significant importance to Plaintiffs and its franchise network is the famous trade name, trademark, and service mark EDIBLE ARRANGEMENTS (the "EDIBLE ARRANGEMENTS Mark"), which serves as the banner of quality that identifies and distinguishes Edible Arrangements' goods and services in the marketplace.

25.     The EDIBLE ARRANGEMENTS Mark, covered by Registration Nos. 2,934,715 and 3,844,160, among others, is incontestable pursuant to the provisions of the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), as is the EDIBLE ARRANGEMENTS Mark and Logo, Reg. Nos. 3,141,566, and 3,844,161, appearing below:



26.     The famous EDIBLE ARRANGEMENTS Mark is widely recognized by the general consuming public as identifying Edible Arrangements and its products and services. Edible Arrangements' branding is widely suffused with references to and displays of this famous mark.

27.     For example, the EDIBLE ARRANGEMENTS Mark is used as the trade name of every Edible Arrangements store and franchise. Each such store features signage and various in-store and point-of-purchase displays of the EDIBLE ARRANGEMENTS Mark, including on coolers, counters, and other decor. Franchisees at the stores wear clothing that displays the EDIBLE ARRANGEMENTS Mark to reinforce consumer perception that all the goods and services through the stores emanate from Edible Arrangements.

28.     Additionally, the Edible Arrangements products sold and delivered to many millions of consumers annually all bear the EDIBLE ARRANGEMENTS Mark on packaging, boxes, and other associated containers and sales documents, such as invoices and delivery notices.

29.     Likewise, the familiar refrigerated delivery vehicles that deliver these products to consumers and circulate daily throughout the U.S proudly display the EDIBLE

ARRANGEMENTS Mark prominently along their sides.

30.     Edible Arrangements' marketing materials, brochures, catalogs, coupons, and sell sheets all likewise feature the EDIBLE ARRANGEMENTS Mark as a designation of source. Edible Arrangements advertises across all important media — television, radio, print, internet, digital, e-commerce, and social media, for example — and invariably emphasizes the EDIBLE ARRANGEMENTS Mark in those advertisements.

31.     Edible Arrangements franchisees also use promotional merchandise, such as jackets, shirts, t-shirts, hats, and store signage, that further display and promote the EDIBLE ARRANGEMENTS Mark.

32.     The cumulative effect of this comprehensive promotion of the EDIBLE ARRANGEMENTS Mark is that consumers — whether purchasers, shoppers, recipients, or even viewers of advertising or refrigerated delivery vehicles — are constantly informed that the EDIBLE ARRANGEMENTS Mark designates the source of the Edible Arrangements products that circulate regularly through United States commerce.

33.     The EDIBLE ARRANGEMENTS Mark is inherently distinctive. It imaginatively combines the normally disparate notions of flower arrangements, which are displayed for their visual appeal and not eaten, and cut fruit, typically served as food.

34.     By virtue of this extensive usage in connection with so many highly-regarded products and services, the EDIBLE ARRANGEMENTS Mark has become widely known to the general consuming public of the United States, has acquired significant secondary meaning, and represents goodwill of enormous value to Edible Arrangements.

35.     Indeed, consumer research demonstrates powerful brand recognition for the EDIBLE ARRANGEMENTS name and mark.

36.     The EDIBLE ARRANGEMENTS Mark is famous, as it is widely recognized

by the general consuming public of the United States as a designation of source of the goods and services of Edible Arrangements, and it became famous well before Defendant's unlawful activities complained of herein.

## GOOGLE & ITS UNLAWFUL CONDUCT

37.     In 1998, Google made its first appearance in the consumer marketplace when it unveiled the first iteration of its search engine. The company quickly gained a loyal following, with its web traffic increasing by 3 million queries per day each month in 2000.[1]

38.     Shortly thereafter on October 23, 2000, Google launched its now-famous Google AdWords program,[2] as a way to further monetize its search engine. Among other things, AdWords permits and encourages merchants and brand owners to buy keywords that will trigger advertisements when Google users search for the keyword term.   Keyword advertising has become a major source of revenue for Google and its competitors—what was only 5% of third quarter total Internet advertising in 2001,[3] became nearly 47% of second quarter total Internet advertising revenue in 2017.[4]

39.     Subsequently, on May 2012, Google unveiled its Knowledge Graph technology which was intended to "help [users] discover new information quickly and easily" by "understand[ing] real-world entities and their relationships to one another: things, not

---

[1] *Google Launches Self-Service Advertising* Program, GOOGLE NEWS (October 23, 2000), https://googlepress.blogspot.com/2000/10/google-launches-self-service.html.
[2] *Google Launches Self-Service Advertising* Program, GOOGLE NEWS (October 23, 2000), https://googlepress.blogspot.com/2000/10/google-launches-self-service.html.
[3] PRICEWATERHOUSECOOPERS, IAB INTERNET ADVERTISING REVENUE REPORT: 2011 THIRD-QUARTER RESULTS (December 2001), 10, https://www.iab.com/wp-content/uploads/2015/05/resources_adrevenue_pdf_IAB_PWC_2001Q3.pdf.
[4] PRICEWATERHOUSECOOPERS, IAB INTERNET ADVERTISING REVENUE REPORT: 2017 FIRST SIX MONTHS RESULTS (December 2017), 9, https://www.iab.com/wp-content/uploads/2017/12/IAB-Internet-Ad-Revenue-Report-Half-Year-2017-REPORT.pdf . In 2017, keyword advertising consisted of the majority of Internet advertising revenue, followed by banner ads at 31%, video ads at 13%, and other at 9%. *Id.* https://www.iab.com/wp-content/uploads/2017/12/IAB-Internet-Ad-Revenue-Report-Half-Year-2017-REPORT.pdf

strings."[5]

40.     In conjunction with this introduction, Google developed Knowledge Panels, which have become a familiar source of information about businesses and brands for Google users.  "When people search for a business on Google, they may see information about that business in a box that appears to the right of their search results.  The information in the box, called the Knowledge Panel, can help customers discover and contact your business."[6]  In other words, Google's stated purpose for displaying Knowledge Panels about a business or brand is to assist users in locating and contacting the businesses or brands they search for on Google.

41.     According to Google, the Knowledge Graph "enables [users] to search for things, people or places that Google knows about…and instantly get information that's relevant to [his or her] query…[Google's Knowledge Graph] aims to tap[ ] into the collective intelligence of the web and understand[ ] the world a bit more like people do."[7]

42.     Despite this self-proclaimed goal of helping users find the businesses they are searching for on the Internet, Google has done precisely the opposite with respect to Edible Arrangements.  More specifically, upon information and belief, Google has prioritized increasing its bottom line and exploiting the value of the EDIBLE ARRANGEMENTS Mark for its own financial benefit over providing relevant, responsive, and non-misleading information to consumers looking for Edible Arrangements and its products on the Internet.

43.     While Google is far from transparent regarding the operations of its searching and advertising mechanisms, upon information and belief, Google accomplishes this unlawful

---

[5] Amit Singhal, *Introducing the Knowledge Graph: things, not strings*, GOOGLE BLOG (May 16, 2012), https://googleblog.blogspot.com/2012/05/introducing-knowledge-graph-things-not.html.
[6] *Your business information in the Knowledge Panel*, GOOGLE SUPPORT, https://support.google.com/business/answer/6331288?hl=en, (last visited Jan. 12, 2018).
[7] Amit Singhal, *Introducing the Knowledge Graph: things, not strings*, GOOGLE BLOG (May 16, 2012), https://googleblog.blogspot.com/2012/05/introducing-knowledge-graph-things-not.html.

scheme of exploiting the EDIBLE ARRANGEMENTS Mark through various means, including without limitation its Adwords programs, its marketing and  "sale" of Edible Arrangements' valuable trademarks as keywords to Edible Arrangements' direct competitors, the algorithms it uses to display competitive "product listing ads" to those looking for Edible Arrangements, its manipulation of the Knowledge Graph technology, and its means of displaying the famous EDIBLE ARRANGEMENTS Mark in prominent proximity to advertisements for competitors' products.

44.     For example, as reflected in Exhibit A, when Google's users enter the EDIBLE ARRANGEMENTS Mark in the Google search bar, they are shown a format of display that is not only at odds with the displays associated with other brand searches, but that also expressly misleads consumers into believing that Edible Arrangements is the source of, sponsors, or is otherwise associated with various competitive brands and their products and advertisements. Thus, when users search for "Edible Arrangements," instead of being shown the customary information about Edible Arrangements in a Knowledge Panel appearing immediately to the right of the topmost search results (as Google describes this functionality), to the right of the search bar they are instead shown "product listing advertisements" that feature advertisements for, links to, and images of competitors' products where the Knowledge Panel should appear. Google thus misleads consumers into making  a "connection" between Edible Arrangements and these competitors' products and denies those consumers immediate access to the information that Google promises it will deliver to "help customers discover and contact" Edible Arrangements.

45.     To make matters worse and drive home the deception, Google also misuses the EDIBLE ARRANGEMENTS Mark by displaying a prominent header stating "shop for Edible Arrangements on Google" immediately above the competitors' product listing ads. Notably,

Google's "Sponsored" disclaimer appears in smaller, differently-colored font and, upon information and belief, is ignored by most users. Google thus urges those seeking Edible Arrangements' products to "shop for Edible Arrangements" by clicking on competitors' ads displaying directly-competing products. A screenshot of Google search results for "Edible Arrangements," displaying this header, is attached as <u>Exhibit B</u>.

46.     The net result of this display is that consumers are deceived into thinking competitive products come from or are associated with Edible Arrangements, Edible Arrangements' valuable trademark is placed in jeopardy, and Google profits handsomely.

47.     Indeed, upon information and belief, while Google was engaged in these unscrupulous tactics and unfair business practices with respect to Edible Arrangements, its advertising revenue has increased and represents a significant portion of its total revenue. Upon information and belief, $63.79 billion of Google's $89.46 billion of revenue in 2016[8] was attributed to its advertising revenues—increasing from about $70 million in 2001.[9]

48.     At the same time that Google is intentionally misleading consumers concerning Edible Arrangements, it provides non-misleading information in response to searches for Edible Arrangements' competitors. Thus, when Google users enter search terms for Edible Arrangements' competitors, Google neither misplaces the Knowledge Graph nor replaces it with a deceptive prompt to "shop for" competitive brands. Rather, consistent with its stated policies and typical means of display, Google simply displays a Knowledge Panel for the company or brand the user was seeking, so that the user can "instantly get information that's relevant to [his or her] query." Examples of such searches for competitors such as Provide Berries, Inc. d/b/a Shari's Berries, Inc. ("Shari's Berries"), FTD Companies, Inc. ("FTD"), and

---

[8] STATISTA SURVEY, SEARCH ENGINE USAGE 19, 29 (August 2017).
[9] STATISTA GOOGLE'S AD REVENUE FROM 2001 TO 2016 (IN BILLION U.S. DOLLARS) 38 (February 2017).

1-800 Flowers.com, Inc. ("1-800 Flowers"), where the Knowledge Graph Card appears on the top right-hand side of the search results without any misleading banner or third party ads, are attached as Exhibit C.

49.     And although Edible Arrangements has put Google on notice of the foregoing and submitted requests to Google which ask Google to cease misuse of the EDIBLE ARRANGEMENTS Mark and update and fix the "Knowledge Graph" treatment appearing in Edible Arrangements' Google search results, Google has failed to respond to a single request.

50.     Google's continued misconduct and unfair business practices are extremely detrimental to Edible Arrangements in part due to Google's popularity amongst Internet users. In fact, upon information and belief, in October 2017 Google represented 78.65% of desktop search traffic in the United States.[10] Because consumers are likely to use the Google search engine before competing search engines, numerous consumers will view Google's deceptive search results for "Edible Arrangements" and be misdirected to websites belonging to Edible Arrangements' competitors.  In addition, by using Google, consumers, who are conditioned to seeing key information about a brand next to their searches, are instead denied valuable business information about Edible Arrangements when Google fails to display the corresponding Knowledge Panel about Edible Arrangements.

51.     Not surprisingly, Edible Arrangements' customer service center has received numerous phone calls from customers who have mistakenly made a purchase through an Edible Arrangements competitor website after searching "Edible Arrangements" through the Google search engine. For instance, one customer states in a recorded customer service phone call, "I did put in Edible Arrangements but this comes up and it says Shari's Berries … but when I Googled it on Saturday to make the placement I thought I was actually doing it from

---

[10] STATISTA SURVEY, SEARCH ENGINE USAGE 32 (August 2017).

Edible Arrangements…I don't even know anything about Shari's Berries, I've never ordered from them, I've always used Edible Arrangements, so I'm like pissed about that …I mean I didn't want to order from there."

52.     Google's conduct described above is likely to cause, and is in fact causing, confusion, mistake, and deception among the consuming public about the source and origin of Edible Arrangements' competitors' goods and services, and is likely to deceive and has deceived the public into believing that such competitive goods and services originate from, are associated with, or are authorized by Edible Arrangements, all to the damage and detriment of Edible Arrangements' reputation, goodwill, and sales.

53.     Google's conduct described above is also likely to dilute, impair, and blur the distinctiveness of the EDIBLE ARRANGEMENTS Mark, which is famous among the general consuming public and has enjoyed that fame since long before Google's misconduct described herein.

54.     By replacing the Knowledge Graph with a "shop for Edible Arrangements" banner over third party advertisements, Google uses an identical replica of the famous EDIBLE ARRANGEMENTS Mark and expressly associates it with multiple third-party brands over whom Edible Arrangements has no control.  That explicitly-drawn connection impairs the distinctiveness of the EDIBLE ARRANGEMENTS Mark by associating a brand that famously designates a single source with multiple different sources.

55.     Google's unlawful conduct has a direct, harmful impact on Edible Arrangements and its franchisees in multiple ways.  Upon information and belief, it has caused the diversion of lawful sales away from Edible Arrangements and its franchisees to Edible Arrangements' competitors, many of whom do not offer products that measure up to Edible Arrangements' exacting quality standards.  Business that rightfully should have gone to Edible

Arrangements and its franchisees has thus gone to Edible Arrangements' competitors instead, competitors who – unlike Edible Arrangements' franchisees – have not invested significant amounts into television and other advertising to earn the name recognition that initiates the search behavior.

56.     In addition to this significant financial damage, Google's unlawful conduct has also caused and will continue to cause irreparable damage to the EDIBLE ARRANGEMENTS Mark and the valuable brand and goodwill it so powerfully represents. Unless enjoined by this Court, Google's conduct will deprive Edible Arrangements of control over its immensely valuable brand and the goodwill it represents, and will undermine Edible Arrangements' investment of time and money over many years in imbuing that Mark with the favorable and unique associations that distinguish the brand in the marketplace. Edible Arrangements has no adequate remedy at law.

**COUNT ONE:**
**(Trademark Infringement Pursuant to 15 U.S.C. § 1114)**

57.     Paragraphs 1-56, above, are repeated and re-alleged as if fully set forth herein.

58.     Google's activities as described above constitute trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. §1114(1)(A).

59.     By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

**COUNT TWO:**
**(False Designation of Origin Pursuant to 15 U.S.C. § 1125(a))**

60.     Paragraphs 1-59, above, are repeated and re-alleged as if fully set forth herein.

61.     Google's activities as described above constitute trademark infringement, false designation of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

62.     By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

## COUNT THREE:
### (Dilution Pursuant to 15 U.S.C. § 1125(c))

63.     Paragraphs 1-62, above, are repeated and re-alleged as if fully set forth herein.

64.     Google's activities as described above are likely to dilute, impair, and blur the distinctiveness of the EDIBLE ARRANGEMENTS Mark in violation of 15 U.S.C. § 1125(c).

65.     By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

## COUNT FOUR:
### (Common Law Unfair Competition)

66.     Paragraphs 1-65, above, are repeated and re-alleged as if fully set forth herein.

67.     Plaintiffs have invested a substantial amount of time, effort, and money in developing their goodwill in the marketplace and that goodwill is inextricably linked to the EDIBLE ARRANGEMENTS Mark.

68.     Google has misappropriated Plaintiffs' goodwill in violation of Plaintiffs' valuable intellectual property rights.

69.     By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

## COUNT FIVE:
### (Violation of CUTPA, Conn. Gen. Stat. §§ 42-110a et seq.)

70.     Paragraphs 1-69, above, are repeated and re-alleged as if fully set forth herein.

71.     Plaintiffs are persons within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. ("CUTPA").

72. At all relevant times, Google acted as a person conducting trade or commerce within the meaning of Conn. Gen. Stat. §§ 42-110a et seq.

73. The foregoing actions of Google constitute unfair and deceptive acts and practices in the conduct of trade or commerce that are unethical, unscrupulous, and offensive to public policy, and are a violation of Conn. Gen. Stat. § 42-110b(a).

74. As a result of the foregoing unfair and deceptive acts and practices, Plaintiffs have suffered an ascertainable loss within the meaning of Conn. Gen. Stat. §§ 42-110g(a) and have suffered damages in an amount to be determined at trial.

75. The foregoing actions of Google show calculated, deceitful, and unfair conduct, and reckless indifference to the rights of the Plaintiffs. Accordingly, Google is liable to Plaintiffs for punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

76. Plaintiffs are transmitting a copy of this Complaint to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut, as required by Conn. Gen. Stat. § 42-110g(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Edible Arrangements respectfully requests an order and judgment against Google as follows:

1. A permanent injunction against Google directing it to

   A. Cease recommending and selling Edible Arrangements' trademarks to others to generate advertisements that are likely to mislead consumers;

   B. Provide proper Knowledge Graph treatment to Plaintiffs by removing all sponsored ads for others in the location where the Knowledge Graph Card is usually placed;

      C.  Cease displaying the Edible Arrangements trademarks in product headers for products that do not originate from Edible Arrangements; and

2.    That Google be directed to file with the Court and serve upon Plaintiffs, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraph 1, above, pursuant to 15 U.S.C. § 1116(a);

3.    That Google be directed to account for and pay to Plaintiffs Google's profits resulting from its unlawful acts, which Plaintiffs believe to be in excess of $9,000,000, and all Plaintiffs' damages realized as a result of Google's mistreatment of the EDIBLE ARRANGEMENTS Mark pursuant to 15 U.S.C. § 1117(a), which Plaintiffs believe to be in excess of $200,000,000.

4.    That Google be directed to pay to the Plaintiffs their attorneys' fees pursuant to 15 U.S.C. § 1117;

5.    That Google be directed to pay to the Plaintiffs their attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g;

6.    That Google be directed to pay to the Plaintiffs punitive damages pursuant to Conn. Gen. Stat. § 42-110g;

7.    That Google be required to pay any punitive damages, including treble damages as permitted by all applicable laws;

8.    That Google be required to pay the Plaintiffs the costs of this action and interest pursuant to applicable law; and

9.    That the Plaintiffs be granted such other relief in law or in equity as this Court deems just and proper.

17

## JURY DEMAND

The Plaintiffs demand a trial by jury on all issues so triable.


                THE PLAINTIFFS, EDIBLE
                INTERNATIONAL, LLC and EDIBLE IP, LLC

By      */s/ Kevin P. Walsh*
          KEVIN P. WALSH
          Williams, Walsh & O'Connor, LLC
          37 Broadway
          North Haven, CT 06473
          Tel:  203-234-6333 / Fax: (203) 234-6330
          Email:  kwalsh@wwolaw.com
          Fed. Bar No.: ct02116


By      */s/ Scott R. Ouellette*
          SCOTT R. OUELLETTE
          Williams, Walsh & O'Connor, LLC
          37 Broadway
          North Haven, CT 06473
          Tel:  203-234-6333 / Fax: (203) 234-6330
          Email:  souellette@wwolaw.com
          Fed. Bar No.: ct26827

          and Proposed Pro Hac Vice Counsel

          Frank W. Ryan
          DLA Piper LLP
          1251 Avenue of the Americas
          New York, NY 10020
          Telephone (212) 335-4850
          Facsimile:  (212) 335-4501
          Email: frank.ryan@dlapiper.com

          Gina Durham
          DLA Piper LLP
          555 Mission Street, Suite 2400
          San Francisco, California 94105-2933
          Telephone (415) 836-2506
          Facsimile:  (415) 659-7333
          Email: gina.durham@dlapiper.com

Melissa A. Reinckens
DLA Piper LLP
401 B Street, Suite 1700
San Diego, California
92101-4297
Telephone  212 335 4798
Facsimile:  1 917 778 8798
Email: melissa.reinckens@dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by U.S. mail, postage prepaid, to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Pursuant to Conn. Gen. Stat. 42-110g a copy of this Complaint is being forwarded to Attorney General and the Commissioner of Consumer Protection as follows:

Attorney General George Jepsen
Office of the Attorney General
55 Elm Street
Hartford CT, 06106

Michelle H. Seagull
Commissioner
Department of Consumer Protection
450 Columbus Blvd.
Suite 901
Hartford CT, 06103

/S/Kevin P. Walsh