UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| EDIBLE INTERNATIONAL, LLC et al, Plaintiff, v. GOOGLE, LLC, Defendants. | No. 3:18-cv-00216 (MPS) |
|---|---|

# RULING ON MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE TO TRANSFER VENUE

Plaintiffs Edible International, LLC and Edible IP, LLC bring suit against defendant Google, LLC, based on the latter's alleged "repeated and intentional placement of advertisements for [plaintiff's] competitors in prominent locations" throughout its search results. (ECF No. 1 at 1). These placements, the plaintiffs allege, are "likely to cause confusion as to whether [plaintiffs'] products and services are affiliated with, originate from, and/or are endorsed by these competitors." (*Id.*) The plaintiffs allege the following claims against the defendant based upon these allegations: (1) trademark infringement in violation of 15 U.S.C. § 1114 of the Lanham Act (count one); (2) false designation of origin in violation of 15 U.S.C. § 1125(a) of the Lanham Act (count two); (3) dilution in violation of 15 U.S.C. § 1125(c) of the Lanham Act (count three); (4) common law unfair competition (count four); and (5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* ("CUTPA"). (*Id.* at 14-15.) The defendant has filed a "Motion to compel arbitration and dismiss this action pursuant to Rule 12(b)(6), or in the alternative transfer it to the Northern District of California" (ECF No. 28), averring that the parties' contract compelled the plaintiffs to arbitrate their claims or alternatively to litigate them in the Northern District of California. For the reasons set forth

below, the defendant's motion is granted in part and denied in part. I grant the defendant's motion to compel arbitration with respect to all of the plaintiff's claims. I decline to dismiss the matter, however, and instead stay it pending the results of the arbitration. In light of this disposition, I deny without prejudice the defendant's motion to transfer venue. If the parties move to reopen this case following the completion of the arbitration, the defendant may refile its motion to transfer venue.

**I.	Background**

The following recitation of the facts is taken from the plaintiff's complaint, along with the exhibits attached to the parties' briefs.

Plaintiff Edible International is the "franchisor of stores offering fresh cut fruit products, and is best known for its artistically-designed fresh fruit products evocative of floral designs and its dipped fruit products." (ECF No. 1 at ¶ 9.) Plaintiff Edible IP "is the owner and licensor of, among other things, the various trademarks, trade dress, domain names, copyrights, and other intellectual property used and associated with the . . . [Edible Arrangements] business and brand . . . ." (*Id.* at ¶ 10.) The defendant operates, amongst other things, the "Google AdWords program," which "permits and encourages merchants and brand owners to buy keywords that will trigger advertisements when Google users search for the keyword term." (*Id.* at ¶ 38.) The defendant also operates a "Knowledge Graph" program, which "enables [users] to search for things, people or places that Google knows about . . . and instantly get information that's relevant to [his or her] query . . . ." (*Id.* at ¶¶ 40-41 (internal quotation marks omitted)).

The plaintiffs contend that the defendant "has prioritized increasing its bottom line and exploiting the value of the [a mark possessed by the plaintiffs] for its own financial benefit over providing relevant, responsive, and non-misleading information to consumers looking for Edible

2

Arrangements and its products on the Internet." (ECF No. 1 at ¶ 42.) In particular, plaintiffs contend that the defendant exploits their mark "through various means, including without limitation its Adwords programs, its marketing and 'sale' of [plaintiffs'] valuable trademarks as keywords to [plaintiffs'] direct competitors, the algorithms it uses to display competitive 'product listing ads' to those looking for Edible Arrangements, its manipulation of the Knowledge Graph technology, and its means of displaying the [plaintiffs' mark] in prominent proximity to advertisements for competitors' products." (*Id.* at ¶ 43.)

At some point before 2014, plaintiff Edible International, Inc. opened an advertising account with the defendant. (ECF No. 30, Declaration of Bright Y. Kellogg ("Kellogg Decl.") at ¶ 6.) "As a condition of participating in [the defendant's] advertising services, an advertiser is first required to accept the Terms And Conditions," which is "accomplished by clicking 'yes' on an interactive window that appears on [the defendant's] website . . . ." (Kellogg Decl. at ¶ 4.) Although "[t]he advertiser is given an opportunity to review the Terms And Conditions before clicking 'yes,' . . . the advertiser will not be able to use [the Defendant's] services until after the Terms And Conditions have been agreed to." (*Id.* at ¶ 5.) The plaintiffs agreed to the defendant's updated Terms And Conditions, which were issued on September 8, 2017. (*Id.* at ¶ 6.) Those Terms and Conditions include a clause providing for the arbitration of disputes, which provides in relevant part as follows:

> A. Arbitration of Disputes. Google, Customer, and Advertiser agree to arbitrate all disputes and claims between Google . . . and Advertiser that arise out of or relate in any way to the Programs or these Terms. This agreement to arbitrate . . . is intended to be broadly interpreted and includes, for example:
>
> 1. claims brought under any legal theory;
> 2. claims that arose before . . . Advertiser first accepted any version of these Terms containing an arbitration provision;
> 3. claims that may arise after the termination of . . . Advertiser's Use of the Programs;

3

4. claims brought by or against Google, Google affiliates that provide the Programs to . . . Advertiser, Google, parent companies, and the respective officers, directors, employees, agents, predecessors, successors, and assigns of these entities; and
5. claims brought by or against . . . Advertiser, the respective affiliates and parent companies of . . . Advertiser, and the respective officers, directors, employees, agents, predecessors, successors, and assigns of these entities

(*Id.*, Exhibit A at 5.) The terms and conditions define "Programs" as "Google's advertising programs and services (i) that are accessible through the account(s) given to Customer in connection with these Terms or (ii) that incorporate by reference these Terms." (*Id.* at 1.) The Terms and Conditions also contain a forum selection clause providing as follows:

> (a) ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, EXCEPT TO THE EXTENT THAT CALIFORNIA LAW IS CONTRARY TO OR PREEMPTED BY FEDERAL LAW.  (b) EXCEPT AS PROVIDED IN SECTION 13, ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALFORNIA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THESE COURTS.

(*Id.* at 7.)

**II.  Discussion**

**a.  Legal Standard**

The Federal Arbitration Act ("FAA") provides that "a written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has held that the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution."  *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (holding

that the FAA "manifest[s] a liberal federal policy favoring arbitration agreements." (internal quotation marks omitted)). Under Section 4 of the FAA, a court must compel arbitration if it finds that there has been a "'failure, neglect, or refusal' of any party to honor the agreement to arbitrate." *Phillips v. Cigna Invs.*, 27 F. Supp. 2d 345, 349 (D. Conn. 1998) (quoting 9 U.S.C. § 4). Further, the Second Circuit has echoed the Supreme Court's recognition of the FAA's policy favoring the strict enforcement of arbitration agreements, instructing that "any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." *Doctors Assocs. v. Hamilton*, 150 F.3d 157, 162 (2d Cir. 1998).

To determine whether parties are compelled to arbitrate, courts consider four factors: "(1) whether the parties agreed to arbitrate; (2) the scope o[f] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McCallister v. Conn. Renaissance Inc.*, 496 Fed. App'x 104, 106 (2d Cir. 2012). Finally, the party seeking to compel arbitration bears the "burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Helenese v. Oracle Corp.*, No. 3:09-cv-351 (CFD), 2010 U.S. Dist. LEXIS 15071, at *8 (D. Conn. Feb 19, 2010).

b. **Analysis**

The plaintiffs' sole argument in opposition to the defendant's motion to compel arbitration avers that arbitration should not be compelled because their claims fall outside the scope of the arbitration clause. (ECF No. 33 at 6.) "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d

Cir. 2001). The first step involves classifying "the particular [arbitration] clause as broad or narrow." *Id.* If the clause at issue is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (internal quotation marks omitted). If the arbitration clause is broad, however, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotation marks omitted). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, this Court 'focuses on the factual allegations in the complaint rather than the legal causes of action asserted.'" *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 36 (2d Cir.2002) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987)). In cases "where . . . the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001).

The plaintiffs concede that the arbitration clause at issue in this case "is a 'broad' arbitration provision that gives rise to a presumption of arbitrability" (ECF No. 33 at 6), but aver that their claims nonetheless fall outside of its scope "because they are clearly collateral to [the defendant's] Terms [A]nd Conditions and do not implicate either of the parties' rights or obligations with respect to [the plaintiffs'] participation in [the defendant's] advertising program." (*Id.* (internal quotation marks omitted)). As noted previously, an issue is "collateral" if it does not fall "within the purview of the [arbitration] clause." *Louis Dreyfus Negoce*, 252 F.3d at 224. The "party resisting arbitration" bears the burden of "demonstrat[ing] that [a]

6

disputed issue is collateral." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983).

The plaintiffs have failed to meet this burden. The arbitration clause at issue applies to "all disputes and claims . . . that arise out of or *relate in any way*" to the defendant's "Programs"—which the contract defines as "Google's advertising programs and services (i) that are accessible through the account(s) given to Customer in connection with these Terms or (ii) that incorporate by reference these Terms" (Kellogg Decl, Exhibit A at 1 (emphasis added).)— and expressly includes "claims brought under any legal theory." (*Id.* at 5 (emphasis added).) The allegations underlying all of the plaintiffs' claims plainly fall within this broad scope. The gravamen of the plaintiff's complaint is that the defendant "accomplishes [an] unlawful scheme of exploiting the [plaintiffs' mark] through various means, including without limitation its Adwords programs, . . . the algorithms it uses to display competitive 'product listing ads' to those looking for Edible Arrangements, its manipulation of the Knowledge Graph technology, and its means of displaying [plaintiffs' mark] in prominent proximity to advertisements to competitors' products." (ECF No. 1 at ¶ 43.) The vast majority of the plaintiffs' other factual allegations relate similarly to the defendant's practices concerning the advertising of their products. (*See* ECF No. 1 at ¶ 44 (alleging that users attempting to search for "Edible Arrangements" on defendant's search engine see advertisements for competitors' products), at ¶ 45 (averring that defendant misuses plaintiffs' mark by displaying header stating "shop for Edible arrangements on Google" immediately above competitors' advertisements). These allegations clearly "relate in any way" to the defendant's advertising services and thus fall within the purview of the parties' arbitration clause.

The plaintiffs' contention that their claims fall outside the scope of the arbitration clause because they do not relate to the parties' contract does not merit a contrary conclusion. (*See* ECF No. 33 at 11.) In support of this argument, the plaintiffs cite the Second Circuit's decision in *Collins & Aikman Products Co. v. Buildings Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995) for the proposition that "claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement." (ECF No. 33 at 11 (citing *Collins*, 58 F.3d at 23).) The contract at issue in *Collins*, however, required arbitration only of claims "arising out or relating to this agreement," 58 F.3d at 18, language casting a narrower net than the clause here, which captures not only disputes arising out of the "Terms" but those relating in any way to Google's advertising "Programs." The same can be said of *FUJIFILM N. Am. Corp. v. Geleshmall Enterprises LLC*, on which the plaintiffs also rely and which concerned an arbitration clause that included "[a]ll claims and disputes arising out of/pertaining to [an] Agreement." *See* 239 F. Supp. 3d 640, 647 (E.D.N.Y. 2017). Given that the breadth of the parties' arbitration clause exceeds the contract, the plaintiffs cannot avail themselves of case law construing arbitration clauses expressly restricted in scope to claims arising out of a contract.

The decision in *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 379 (S.D.N.Y. 2010), is instructive on this point. *TradeComet.com* concerned a forum selection clause that expressly pertained to all claims that "relat[ed] to [the parties'] agreement or the [defendant's advertising] programs." *Id.* at 374. The plaintiff argued that its subsequent antitrust claims fell beyond the scope of the forum selection clause. *Id.* at 378. In rejecting this argument, the court noted that it "need not determine whether [the plaintiff's] antitrust claims arise out of or relate to the [parties'] agreement because they clearly arise out of and relate to [the

8

defendant's programs]." *Id.* In reaching this conclusion, the court distinguished Second Circuit precedent construing forum selection clauses expressly limited to all claims arising out of the agreements in which the clauses were contained. *Id.* at 379. Here, just as in *TradeComet*, the parties' arbitration clause exceeds the bounds of their contract. The plaintiff's claims are therefore subject to arbitration.

The defendant has also moved to dismiss the action. The Second Circuit has held that an action must be stayed if all claims have been referred to arbitration and a stay has been requested.[1] *Katz v. Cellco P'Ship*, 794 F.3d 341, 347 (2d. Cir 2015) ("[W]e conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). The defendant argues that *Katz* only directly applies to cases where a party moves to compel arbitration *and to stay the action*; the defendant did not request a stay. (ECF No. 34 at 6.) However, the plaintiff requested a stay in the event that the Court grants the defendant's motion to compel arbitration. (*See* ECF No. 33 at 11 ("If [the plaintiff's] claims are found arbitrable, this action should be stayed to allow arbitration, rather than dismissed as Google contends.").)

To the extent that the defendant contends *Katz* only applies in cases where the *defendant* requests a stay of proceedings, the Second Circuit has strongly implied that such a narrow understanding of *Katz* is unwarranted. *See Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (concluding that because plaintiff "did not request a stay before the district court entered judgment" granting defendant's motion to compel arbitration, "[9 U.S.C. § 3 of the FAA]

---

[1] The defendant contends that this Court should apply the law of the Northern District of California on this matter because "the parties have agreed to litigate disputes such as this in the Northern District of California." (ECF No. 34 at 6.) This argument presupposes that the Court would ratify the forum selection clause in the Terms And Conditions, an argument that the defendant advanced in the alternative and that the Court does not reach in this ruling. I therefore apply the law of the Second Circuit in adjudicating this dispute.

did not require the district court to stay the proceedings" (citing *Katz*, 794 F.3d at 346)); *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 Fed. App'x 19, 21 (2d Cir. 2016) (summarizing holding of *Katz* as "district courts lack discretion to dismiss, rather than stay, an action when all claims are referred to arbitration and a stay requested *by any party*" (emphasis added)). Even if I did have discretion to determine whether to issue a stay or dismiss the case, *see Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) ("When a stay is not requested, a district court has discretion in determining whether to stay or dismiss the case pending arbitration."), I would conclude that a stay was warranted.

The Court will therefore stay this action and administratively close this case (but not enter judgment) until arbitration has concluded. In light of this disposition, I deny without prejudice the defendant's motion in the alternative to transfer venue. If the parties move to reopen this case following the completion of the arbitration, the defendant may refile its motion to transfer venue.

### IV. Conclusion

For the reasons discussed above, the defendant's motion to compel arbitration or in the alternative transfer venue (ECF No. 28) is hereby GRANTED IN PART AND DENIED IN PART. The matter is hereby stayed pending the parties' arbitration of the plaintiff's claims. The clerk is instructed to close this case but not enter judgment. Any party may move to reopen this case within 30 days of completion of the arbitration and the case shall be reopened upon the filing of such a motion. The moving party may also seek the lifting of the stay and the entry of judgment or may seek to initiate further proceedings in this action. In light of this disposition, I deny without prejudice the defendant's motion in the alternative to transfer venue. If the parties

move to reopen this case following the completion of the arbitration, the defendant may refile its motion to transfer venue.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　Michael P. Shea, U.S.D.J.

Dated:　　　　Hartford, Connecticut

　　　　　　　July 13, 2018